UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRANT'S FINANCIAL PUBLISHING INC. <br><br> Plaintiff, <br><br> v. <br><br> ARDSLEY ADVISORY PARTNERS <br><br> Defendant. | Case No. _____ <br><br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> Jury Trial Demanded |

## Nature of the Action

1.      This is a civil action for copyright infringement arising under the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*  Plaintiff Grant's Financial Publishing Inc. ("Grant's") brings this action as a result of Defendant Ardsley Advisory Partners ("Ardsley's") systematic infringement of Grant's registered copyrights in its semi-monthly financial newsletter, *Grant's Interest Rate Observer*.  Ignoring multiple copyright notices and repeated specific, written warnings, as well as basic fairness and common sense, Ardsley routinely made multiple unauthorized copies of *Grant's Interest Rate Observer* on a regular basis, causing significant harm to Grant's.

## The Parties

2.      Grant's is a small, family-owned business incorporated in New York and located at 2 Wall St., New York, NY 10005.  Grant's was founded in 1982 and currently has eight employees.  Its primary product is *Grant's Interest Rate Observer*, a newsletter analyzing the financial markets in a

manner directed to investment professionals. It publishes *Grant's Interest Rate Observer* twice monthly, offering an annual subscription at a current price of $785.

3.      Defendant Ardsley (also doing business as "Ardsley Partners") is an investment firm registered in Connecticut, with headquarters at 262 Harbor Drive, 4th Floor, Stamford, Connecticut 06902. On information and belief, Ardsley conducts routine and systematic business in New York and in this district.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Ardsley's substantial and ongoing contacts with New York, including contacts related to and giving rise to the claims asserted in this Complaint, subject it to personal jurisdiction here. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

### The Wrongful Conduct

5.      On or around October 22, 1990, a partner or an employee of Ardsley, believed to be Managing Partner Philip Hempleman, initiated a subscription to *Grant's Interest Rate Observer* by contacting Grant's office. Acting on behalf of Ardsley, the employee arranged for payment of the single subscription, and renewed it annually by making payment to Grant's in response to renewal invoices sent by Grant's. Grant's mailed each paper issue to the employee pursuant to this subscription arrangement.

6.      Beginning in 2003, Grant's provided the option for its authorized subscribers to receive access to its newsletter electronically, by download from its web site server. Announcement of this option was accompanied by many reminders and warnings against unauthorized copying, and Grant's

required authorized subscribers to install a "plug-in" on their computers to prevent unauthorized access. The Ardsley employee opted to receive online access beginning in February 2003, installed the plug-in, and has accessed the Grant's web site and downloaded the newsletter regularly.

7.      Each issue of *Grant's Interest Rate Observer* contains original subject matter and is copyrightable under the laws of the United States.  Grant's is the sole owner of the copyright in each issue of *Grant's Interest Rate Observer*.  Grant's practice is and was to promptly register its copyright in each issue of *Grant's Interest Rate Observer*.  Representative registrations during the Ardsley employee's period of subscription are attached as Ex. A hereto.

8.      On information and belief, Ardsley routinely, systematically, and willfully made and distributed multiple unauthorized copies of issues of *Grant's Interest Rate Observer*, on a regular basis during the term of the aforementioned subscription.  Ardsley did this as part of its business operations and for the purpose of increasing its business and profits.

9.      Ardsley copied *Grant's Interest Rate Observer* in spite of widespread copyright notices and warnings in a variety of materials received and used by Ardsley.  For example, each issue of *Grant's Interest Rate Observer* contained text similar or identical to the following:

**Copyright warning and notice:** It is a violation of federal copyright law to reproduce all or part of this publication to anyone (including but not limited to others in the same company or group) by any means, including but not limited to photocopying, printing, faxing, scanning, e-mailing, or Web site posting. The Copyright Act imposes liability up to $150,000 per issue for infringement. Information concerning possible copyright infringement will be gratefully received. See *www.grantspub.com/terms.php* for additional information.

Subscribers may circulate the one original issue received in the mail from Grant's, for example, using a circulation/routing slip. Multiple copy discounts and limited (one-time) reprint arrangements also may be available upon inquiry. Copyright 2004 [or applicable year], Grant's Financial Publishing Inc. All rights reserved.

10.    Various copyright notices and warnings also appeared throughout Grant's web site, which was used regularly by Ardsley, and in emails to Ardsley. For example, the subscriber login page on Grant's web site emphasized that it "is a violation of federal copyright law to reproduce all or part of this publication and/or this Web site, and its contents by photocopying, faxing, scanning or any other means." Emails regarding the online issues of *Grant's Interest Rate Observer* regularly stated that "access is restricted to registered users only." Moreover, the fact that Grant's instituted a password-protected access system online, <u>locked</u> the electronic issues in Portable Document Format (PDF) using special software, and widely advertised these new protections to its subscribers in 2003 and 2004 served further, obvious notice that the issues were not to be copied.

11.    In addition, *Grant's Interest Rate Observer* periodically contained feature stories on Grant's efforts to enforce its copyrights, including by lawsuit if necessary. For example, the June 18, 2004 issue carried a story bearing a banner, bold-faced headline **"STAMP OUT LITIGATION,"** which urged subscribers to obey the copyright laws and gave them every opportunity to do so, detailing legal ways in which subscribers could utilize Grant's and describing a group discount offer for honest

- 4 -

subscribers who wanted to obtain copies legally.  Similar stories ran in 2003 and 2004, and some warned that "[w]e use all available means, including new technology, to monitor unlawful copying."

12.    Ardsley likely received further warning of the impropriety and potential effects of infringement in October 2003, or shortly thereafter, when it was widely reported throughout the financial industry that Legg Mason, Inc. and its subsidiary were assessed a nearly-$20 million verdict for internal copyright infringement of a financial newsletter.  Moreover, as a matter of simple fairness and common sense, Ardsley knew that what it was doing was wrong.

13.    Although Ardsley understands and purports to respect copyrights, it in fact fosters a culture that tolerates and encourages infringement that it believes is likely to go undetected.

### First Cause of Action:  Copyright Infringement

14.    Ardsley's systematic, unauthorized copying and distribution of copies of *Grant's Interest Rate Observer*, and violation of other exclusive rights set forth in the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, constitutes willful copyright infringement.  Grant's has been damaged and faces the threat of irreparable injury from future infringements for which it has no adequate remedy at law.  Ardsley has unjustly profited by its infringement of Grant's copyrights.

15.    At any time before final judgment, Grant's is entitled to elect to receive statutory damages in lieu of actual damages and profits.  17 U.S.C. § 504(c).  For willful copyright infringement, the jury may award up to $150,000 for each infringed issue of *Grant's Interest Rate Observer*.  Ardsley's infringement of each issue was willful.  Ardsley's period of subscription included approximately 276 timely registered issues.  The precise number of infringed issues will be determined during discovery.

16.    Grant's alternatively may choose to recover Ardsley's profits attributable to infringement plus Grant's actual damages. 17 U.S.C. § 504(a). The statute provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Ardsley's gross revenues over the period of the infringements is not known at this time, but will be determined during discovery.

## Prayer For Relief

WHEREFORE, Grant's respectfully prays and demands that:

A.    Ardsley be required to pay to Grant's actual damages for infringement, including but not limited to infringement of the previously-registered issues identified in Ex. A hereto, and be required to account to Grant's and pay Grant's for profits attributable to the infringement;

B.    At Grant's election prior to the entry of final judgment in this case, and as an alternative to actual damages and profits, Ardsley be required to pay statutory damages as permitted by the Copyright Act, for each timely-registered issue of *Grant's Interest Rate Observer* that was infringed, and specifically, pay enhanced statutory damages of $150,000 per work for each of issue of *Grant's Interest Rate Observer* that was willfully infringed;

C.    Ardsley and its partners, officers, agents, servants, employees, and attorneys, and those in active concert or participation therewith be enjoined preliminarily and permanently from in any manner, directly or indirectly, copying or distributing any tangible or electronic copy of any issue of *Grant's Interest Rate Observer*, or any portion thereof, and from inducing, aiding, causing or materially contributing to any such conduct by anyone else;

D.      Ardsley and each of its partners, officers, agents, servants and employees be ordered to surrender for inventory and destruction all copies of *Grant's Interest Rate Observer*;

E.      Grant's be awarded pre-judgment and post-judgment interest;

F.      Punitive damages be awarded to the extent permitted by law;

G.      Ardsley be ordered to pay Grant's costs of this action, and Grant's reasonable attorneys' fees incurred in connection with this action; and

H.      The Court award such other and further relief as is just.

### Jury Demand

Plaintiff Grant's demands a trial by jury.

Respectfully submitted,

By: _William B Baker_
      William B. Baker (WB 3459)
      Thomas W. Kirby
      Bruce G. Joseph
      Scott E. Bain
      WILEY REIN & FIELDING LLP
      1776 K Street, N.W.
      Washington, D.C.  20006
      (202) 719-7000

Dated: April 14, 2005          Attorneys for the Plaintiff